UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ROY C. NEAL,

    *Petitioner,*

                                  Electronically Filed

                                  Case No. 3:18-CV-125-RGJ-CHL

VS.

LELIA A. VANHOOSE, *et al,*
    *Respondents.*

## **MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT**
## **AND GRANT OF WRIT OF HABEAS CORPUS**

### FACTS OF THE CASE

On July 9, 2001, Movant Roy C. Neal (Mr. Neal) pleaded guilty in the Jefferson Circuit Court to offenses in three Indictments, as follows:

(a)     **Indictment No. 00-CR-1557**. Mr. Neal pleaded guilty to one count of Theft by Deception (Checks over $300.00) and one count of Theft by Failure to make Required Disposition of Property, and received a sentence of five (5) years on each, run concurrently.

(b)     **Indictment No. 00-CR-2531**. Mr. Neal pleaded guilty to two counts of Theft by Deception (Checks over $300.00). He received a sentence of five (5) years on each, run consecutively to each other for a total of ten (10) years.

(c)     **Indictment No. 00-CR-2661**. Mr. Neal pleaded guilty to one count of Theft by Deception (Checks over $300.00) and two misdemeanor counts of Failure to Register Transfer of a Motor Vehicle pursuant to KRS 186.190 and received a sentence of five (5) years on the felony and twelve months on each of the misdemeanors, run concurrently.

The three sentences were themselves run concurrently to each other for a total of ten years, probated for five years.

1

On October 16, 2001, after a restitution hearing, the trial Court entered an Order of Restitution in the three cases in the amount of $91,882.00, plus "interest during the repayment period (emphasis added)." As of October 5, 2020, Mr. Neal has paid $9,778.00 in restitution.

On February 13, 2002, the Commonwealth moved to revoke Mr. Neal's probation due to other charges. On February 3, 2003, this Court entered its Order revoking the probation. Mr. Neal served until he received parole on July 21, 2005.

The conditions of Mr. Neal's parole were as follows:

1. Report to parole officer;
2. Permit officer to visit home and job placement sites;
3. No use of non-prescribed drugs;
4. Work, support legal dependents, report unemployment to parole officer, and make every effort to gain employment;
5. Not to associate with convicted felons;
6. Not to visit with inmates at penal institutions;
7. Not to leave state, district, residence, or place of employment without written permission;
8. Not to purchase, own, or possess a firearm;
9. Not to violate any law or ordinance;
10. Not to falsify any report to parole officer;
11. May not register to vote;
12. Comply with all rules and administrative regulations of Probation and Parole;
13. Pay a supervision fee, unless waived;
14. Shall submit to random drug and alcohol testing.

Exhibit 1 at 2. The parole also specified the special condition of "NO CONTACT WITH VICTIM(S) AND/OR VICTIM FAMILY(IES) WHILE ON PAROLE." *Id.*

Restitution was not listed as a condition of parole.

Mr. Neal moved to Georgia with permission from the Kentucky Parole Board to serve his paroled sentence pursuant to the Interstate Compact for Adult Offender Supervision, KRS 439.561.

In June 2007, Mr. Neal was released from active parole supervision. *See* Exhibit 2. Similarly to most parolees released from active supervision, he was still required to report any

change in place of residence or employment to his assigned Interstate Compact parole officer. He continued to live in Georgia, worked as a car salesman, attended his church, provided address information to his interstate compact officer, and led a quiet life.

Almost six years after he was released from active supervision, on January 27, 2013, Mr. Neal was arrested by the Norcross (Georgia) Police Department on a Kentucky Parole Violator warrant (Exhibit 3) dated May 12, 2010, stating that he had violated his parole by "[f]ailure to make restitution as directed."

Mr. Neal learned then that on June 4, 2008, the Kentucky Department of Corrections, by and through Deputy Compact Administrator Angela Tolley, had allegedly sent a letter to him at a previous address he had had in Georgia notifying him that the Parole Board had

> …amended [his] special conditions of supervision to include a restitution obligation in the amount of $76,681.05. This restitution must be paid at a rate of $200.00 a month. This addition is the result of an action filed by the Jefferson County Commonwealth's Attorney's Office and failure to comply with this condition can result in parole revocation. It is also imperative to note that your release from parole supervision is now based upon when you have paid this restitution amount in full but at this time you shall be permitted to remain on active supervision.

Exhibit 4. Mr. Neal never received such a letter until after he had been returned to custody and was facing his initial parole violation hearing.

He was subsequently returned to Kentucky for his parole violation hearing, which took place on February 19, 2013, over ten years after his probation had been revoked and he had started serving his sentence. He argued that he had not received notice of the change to his conditions of parole, and that he had the ability to pay restitution if he were allowed to return to Georgia, where he had a good job.

After hearing, the Administrative Law Judge referred the case to the Parole Board "without recommendation" as to revocation. Commonwealth of Kentucky Parole Board Parole Revocation Preliminary Hearing (Exhibit 4 at 3) (emphasis in original). Mr. Neal's parole was subsequently revoked via a form order of the Parole Board (Exhibit 4 at 4).

While again imprisoned in Kentucky, Mr. Neal attacked the terms of his confinement. He acknowledged the existence of KRS 439.344(5), which states that the period of time spent on parole shall count as a part of the prisoner's sentence, except when a parolee is

> [r]eturned to prison as a parole violator and it is subsequently determined that he or she owes restitution pursuant to KRS 439.563 and has an arrearage on that restitution. Any credit withheld pursuant to this subsection shall be reinstated when the arrearage is paid in full…

However, since there had not been a parole condition of restitution imposed at the time of parole, and since he had never received notice that it had been added to his conditions of parole, Mr. Neal argued that he had served out his term of imprisonment.

Mr. Neal, who was then housed in the Marion Adjustment Center, filed a petition for habeas corpus in the Marion Circuit Court (Case No. 13-CI-00177). He was immediately moved to the Boyle County Jail. The Department of Corrections sought and received an order of dismissal due to improper venue.  In the meantime, Mr. Neal re-filed his habeas petition in the Boyle Circuit Court (Case No. 13-CI-00288). DOC transferred Mr. Neal yet again, this time to the Grayson County Jail. Mr. Neal thus re-filed his habeas petition a third time in the Grayson Circuit Court (Case No. 13-CI-00307). That case was still in litigation, despite the fact that Mr. Neal was subsequently transferred to the Hopkins County Jail and then to Meade County, at the time of his parole on April 1, 2014.

Based on the Department of Corrections' calculation of his time served, Mr. Neal would theoretically have been under supervision until October 31, 2016.[1] However, due to the operation of KRS 439.563 (3)(d) and (5), Mr. Neal is on parole until "the restitution is paid in full, even if this would lengthen the period of supervision beyond the statutory limit of parole supervision or the statutory limit for serving out the sentence imposed." KRS 439.563(5); *see also* KYPB 12.00(C)(2) (Exhibit 5). This is borne out by Mr. Neal's current listing on the Department of Corrections' Kentucky Offender Online Lookup, which lists Mr. Neal's "supervision end date" **as "1/1/2099."** http://kool.corrections.ky.gov/KOOL/Details/4463 (emphasis added).

Based on the Parole Board's restitution amount of $76,681.05 from the 2008 letter the Department of Corrections sent Mr. Neal (at an address at which he no longer lived), Mr. Neal still owes approximately $69,000. Paying at the rate of $210.00 per month, it will take Mr. Neal approximately 364.4 months, or 30.36 years, to pay the restitution. If he is still alive at that point, Roy Neal will be 98 years old. He will have served a total of three years and eight months in prison, and 39 ½ years on parole, for these nonviolent theft charges.

On November 19, 2015, citing the above facts, Mr. Neal moved the Jefferson Circuit Court, Division Six, pursuant to KRS 439.563(3)(d) and (5) and Kentucky Parole Board Policies and Procedures (KYPB) 12-00(C)(2), to remove the condition of restitution from his conditions of parole. The Circuit Court held a hearing on February 29, 2016, on Mr. Neal's Motion. On or about March 1, 2016, the Circuit Court entered its Order denying the Motion as premature.

On or about May 5, 2017, Mr. Neal re-filed, through counsel, a Request for Modification or Removal of Restitution Condition of Parole pursuant to the other prescribed option available

---

[1] This stands in contrast to Mr. Neal's Corrections time card, which placed his minimum expiration of sentence at 05/24/2017 and his maximum at 08/08/2020.

under KRS 439.563(3)(d) and (5), and KYPB 12-00(C)(2). On May 25, 2017, his Request was denied (Exhibit 6). All state remedies have thus been exhausted.

Mr. Neal filed the present Petition for Writ, naming both the members of the Parole Board and the then Attorney General of Kentucky as parties, inasmuch as the Petition challenged the constitutionality of sections of KRS 439.563. Both the Parole Board and the Attorney General moved to dismiss the Petition (DN 10, 11). On August 18, 2019, the Court entered a Memorandum and Order denying the Parole Board's Motion to Dismiss and granting the Attorney General's Motion to Dismiss (DN 18). On September 27, 2019, the Parole Board filed its Answer to the Petition (DN 22).

Mr. Neal is now seventy-three (73) years old. He is still working full-time and paying his restitution. However, he is still on parole and still, unbelievably, under active supervision. A Georgia state parole officer regularly visits his workplace, Curry Honda, in Chamblee, Georgia. Mr. Neal recently has been advised by his officer that the officer attempted to terminate active supervision in summer 2020, but that the Commonwealth of Kentucky has objected.

## Operation of KRS 439.563

KRS 439.563, as currently enacted, states as follows:

(1) When there is an identified victim of a defendant's crime to whom restitution has been ordered but not yet paid in full, or restitution has been ordered paid to a government agency and has not yet been paid in full, the Parole Board shall order the defendant to pay restitution as a condition of parole.

(2) When the Parole Board orders restitution, the board shall:

    (a) Order the restitution to be paid to a specific person or organization through the Division of Probation and Parole, which shall disburse the moneys as ordered by the board;
    (b) Set the amount of restitution to be paid, if not already set;
    (c) Set the amount and frequency of each restitution payment or require the payment to be made in a lump sum.

  (3)  When the Parole Board orders restitution, the Department of Probation and Parole shall:

    (a)  Monitor and oversee the collection of the restitution;
    (b)  Institute parole violation proceedings if the restitution is not being paid;
    (c)  Institute sanctions against the defendant if restitution is not being paid and good cause is not shown for the nonpayment; and
    (d)  Maintain parole supervision over the defendant until restitution has been paid in full.

  (4)  The board, in addition to any other sanctions which may be imposed on the defendant, may ask a court to hold a defendant who is not paying restitution in the manner or amount prescribed in contempt of court.

  (5)  Any statute relating to the length of parole supervision notwithstanding, the parole for a person owing restitution shall be until the restitution is paid in full, even if this would lengthen the period of supervision beyond the statutory limit of parole supervision or the statutory limit for serving out the sentence imposed.

  (6)  Payment of restitution in full prior to the end of the period of parole supervision shall not shorten the period of parole supervision.

2014 Ky. Acts ch. 94, sec. 6, effective July 15, 2014 (emphases added).

  Nowhere in the statute is there any limitation on the ability of the Parole Board to re-incarcerate the defendant who has served out, but who still owes restitution. Moreover, the Parole Board has the further enumerated power to ask "a court" (although it is unclear whether it would be the sentencing court, a court in the county in which the Parole Board sits, or even whether it would be a Kentucky state circuit court or district court) to hold a non-paying defendant in contempt.

7

## ARGUMENT

### Introduction

28 U.S.C. § 2241 provides that

> [w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The statute is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *see also United States v. Mauro*, 436 U.S. 340, 357, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978).

*Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2012).

With regard to state prisoners, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of habeas corpus on behalf of a person in state custody shall not be granted unless the applicant has exhausted the remedies available in the courts of the State. *See, e.g.,* 28 U.S.C. 2254(b)(1)(A).

A challenge to the manner or execution of a sentence is appropriate under § 2241. *See, e.g., Hill v. Masters*, 836 F.3d 591, 594 (6th Cir. 2016); *Luedtke v. Berkebile*, 704 F.3d 465, 466 (6th Cir. 2013) (inmate's claim that he was improperly placed on refusal status for Inmate Financial Responsibility Program was cognizable in a § 2241 proceeding as a challenge to the execution of his sentence).

Summary judgment is appropriate when the record reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The "moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.,* 532 F.3d 469, 483 (6th Cir. 2008).

Once a party files a properly supported motion for summary judgment, "the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250. The Court must "accept Plaintiff's evidence as true and draw all reasonable inferences in his favor." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Anderson*, 477 U.S. at 255). The Court may not "make credibility determinations" or "weigh the evidence when determining whether an issue of fact remains for trial." *Id.* (*citing Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001)).

"The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a [fact-finder] or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestle USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251-52). If there is a dispute over facts that might affect the outcome of the case under governing law, the entry of summary judgment is precluded. *Anderson*, 477 U.S. at 248.

Continuing Mr. Neal's parole beyond the statutory maximum based on these facts and the operation of KRS 439.563 denies him equal protection and due process under the Fifth and Fourteenth Amendments to the United States Constitution. While there is no question that Mr. Neal still has restitution outstanding, under any measurement, he has more than served his sentence as it was originally imposed.

## II.   EXTENSION OF MR. NEAL'S PAROLE BEYOND THE STATUTORY MAXIMUM DENIES HIM DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS.

### A.   KRS 439.563 as currently enacted violates due process.

Petitioner avers that KRS 439.563 is unconstitutionally vague to the extent to which it subjects parolees such as Petitioner to the risk of confinement, with no identified procedure for adjudication and no defined release dates, **after the completion of their sentences**. As such,

9

application of the statute violates the due process rights of Mr. Neal and all similarly situated "overtime" parolees.

First, KRS 439.563(3) provides that the Kentucky Department of Probation and Parole shall, *inter alia*, "institute parole violation proceedings if the restitution is not being paid," and "sanctions against the defendant if restitution is not being paid and good cause is not shown for the nonpayment…" Mr. Neal's sentence has otherwise been completed. He is already under active, monthly supervision by the Georgia Department of Probation and Parole pursuant to the Interstate Compact. There is no intermediate sanction available to the Department of Probation and Parole and no unserved portion of his sentence to force him to serve. There is simply no ground whatsoever for sending him or anyone else similarly situated back to prison as a parole violator.

KRS 439.563(4) appears facially to provide an alternative road to re-imprisonment by stating that "[t]he board, in addition to any other sanctions which may be imposed on the defendant, may ask a court to hold a defendant who is not paying restitution in the manner or amount prescribed in contempt of court."

First, the statute does not set forth whether failure to pay restitution (after what would otherwise be a serveout) is a criminal or civil contempt of court. The differences, of course, are huge.

Kentucky's seminal description of contempt of court proceedings is found in *Commonwealth v. Burge,* 947 S.W.2d 805, 808 (Ky. 1996):

> Contempt is the willful disobedience toward, or open disrespect for, the rules or orders of a court. "Contempts are either civil or criminal." *Gordon v. Commonwealth*, 141 Ky. 461, 463, 133 S.W. 206, 208 (1911). Civil contempt consists of the failure of one to do something under order of court, generally for the benefit of a party litigant. Examples are the willful failure to pay child support as ordered, or to testify as ordered. While one may be sentenced to jail for civil contempt, it is said that the contemptuous one carries the

> keys to the jail in his pocket, because he is entitled to immediate release upon his obedience to the court's order. *Campbell v. Schroering*, Ky.App., 763 S.W.2d 145, 148 (1988).
>
> Criminal contempt is conduct "which amounts to an obstruction of justice, and which tends to bring the court into disrepute." *Gordon, supra*, 141 Ky. at 463, 133 S.W. at 208. " 'It is not the fact of punishment but rather its character and purpose, that often serve to distinguish' civil from criminal contempt." *Shillitani v. United States*, 384 U.S. 364, 369, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622, 627 (1966) (*quoting Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797, 806 (1911)). If the court's purpose is to punish, the sanction is criminal contempt.
>
> Criminal contempt can be either direct or indirect. A direct contempt is committed in the presence of the court and is an affront to the dignity of the court. It may be punished summarily by the court, and requires no factfinding function, as all the elements of the offense are matters within the personal knowledge of the court. *In re Terry*, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888). Indirect criminal contempt is committed outside the presence of the court and requires a hearing and the presentation of evidence to establish a violation of the court's order. It may be punished only in proceedings that satisfy due process. *Cooke v. United States*, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925).

In Kentucky, criminal contempt of court is governed generally by KRS 432.230 *et seq*. and case law. Under the separation of powers doctrine, the legislature cannot make laws that would materially limit a court's contempt powers. *Norton v. Commonwealth*, 37 S.W.3d 750, 755 (Ky. 2001). Nevertheless, contempt of court is considered to be the equivalent of a misdemeanor offense. *Id.* at 754. However, a court cannot impose a fine of greater than $500 nor impose a sentence of more than 6 months of imprisonment without a jury trial. *Vaughn v. Asbury*, 726 S.W.2d 315, 317 (Ky. App. 1987).

KRS 439.563 addresses nothing regarding whether this is to be considered a civil contempt (where, at least in theory, a person not otherwise under the jurisdiction of the Parole Board theoretically could cure the contempt by bringing his or her restitution current) or a criminal

11

contempt to be punished by jail time and/or a fine. Nor is there any clue as to what court would have jurisdiction or where venue would lie.[2]

Even assuming *arguendo* that this statute refers to a criminal contempt of court, a parolee subject to this statute would be subject to multiple imprisonments above and beyond serve-out.

Petitioner, Roy Neal, asks that this Court find that he is in custody in violation of the Constitution or laws or treaties of the United States and, further, that KRS 439.563 as currently enacted is unconstitutional.

### B. Mr. Neal was denied notice and opportunity to challenge the addition of restitution to the conditions of his parole.

Even if the current iteration of KRS 439.563 were somehow to be found constitutional, the failure of the Kentucky Parole Board to provide proper notice and an opportunity for Mr. Neal to be heard on the issue of adding restitution to his terms of parole in 2008, seven years after his sentencing and restitution hearing and six years before the current enactment of KRS 439.563, violated his right to due process of law under the United States Constitution, Amendments V and XIV.

By the same token, the extension nearly *ad infinitum* of Mr. Neal's sentence, years after it was imposed, denies him due process because it punishes him for many more years than any Court could have envisaged at the time he was being prosecuted and entered his plea. Moreover, if he failed to pay and were to be revoked again, there is no way to decide how long he should then serve, or when he should see the Board. Alternatively, if the Board elected to file an action in the nature of contempt in "a court," there is absolutely no guidance as to where or how that would

---

[2] In Mr. Neal's case, this is particularly troublesome, because he is supervised under the Interstate Compact in Georgia. Even if he were violated and returned to Kentucky, would he face contempt in the county from which he was sentenced (Jefferson) or where the Parole Board presides (Franklin)? No one, currently, can answer that question.

occur or whether it would be a civil contempt (curable by payment) or a criminal contempt (and thus punitive in nature).

Mr. Neal understands that restitution is a condition of the original judgment against him. However, to impose an indefinite parole, without prior notice, with the threat of indefinite imprisonment and/or separate contempt action without any notice as to its legal purpose (curative or punitive) or procedure, denies him any meaningful avenue of redress. It becomes, in effect, debtor's prison. On this ground, as well, Petitioner asks that this Court find that he is in custody in violation of the Constitution or laws or treaties of the United States and enter an Order directing the Kentucky Parole Board to release him from custody.

### III. EXTENSION OF MR. NEAL'S PAROLE BEYOND THE STATUTORY MAXIMUM DENIES HIM EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT.

"[P]arolees are on the "continuum" of state-imposed punishments . . ., [and [o]n this continuum,. . . parole is more akin to imprisonment than probation is to imprisonment." *Samson v. California*, 547 U.S. 843, 850 (2006). Parole constitutes a significant deprivation of liberty that amounts to a continuing sentence. In Mr. Neal's case, this means not only payment of the restitution but meetings with his officer; payment of monthly supervision fees; drug testing; and reporting changes in residence, job, even who lives with him in his home.

KRS 439.563, and KYPB 12-00, have the effect of extending the sentence for any offense involving restitution beyond the statutory maximum.

In general,

> "[a] State cannot subject a certain class of convicted defendants to a period of imprisonment beyond the statutory maximum solely because they are too poor to pay the fine'. . . "[I]f the State determines a fine or restitution to be the appropriate and adequate

13

> penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it.

*Bearden v. Georgia*, 461 U.S. 660, 664, 667–68 (1983) (*citing Williams v. Illinois,* 399 U.S. 235 (1970), and *Tate v. Short*, 401 U.S. 395 (1971)).

While *Bearden* dealt with a completely indigent defendant, the fact that Mr. Neal is not "indigent" in this context is not significant, because he is still too poor to have paid the restitution within the period of his sentence. Mr. Neal is not completely impoverished, because despite his advanced age he is working. However, he has already served his time. He had paid over $15,000.00 in restitution before he was first imprisoned. On his release, he was supervised by an interstate compact officer. He was released from active supervision with an admonition to notify his interstate compact officer if he moved employment or residence, with which he complied.

A year later, the Commonwealth of Kentucky sent him a letter notifying him that restitution had been added to his conditions of parole. Through no fault of Mr. Neal, this letter went to an address at which he no longer lived. He did not get that letter.

**Five years after that,** with no further notice from the Commonwealth or his interstate compact officer, he got arrested and went through the parole violation process.

By the time Mr. Neal's sentence would otherwise have been up, he was seventy years of age. However, due to the operation of KRS 439.563(3)(d) and (5) and KYPB 12-00, he is serving essentially a life sentence. Based on the Department of Corrections' current calculation of his time served, Mr. Neal would theoretically have been under supervision until October 31, 2016. *See, e.g.,* Kentucky Department of Corrections, Kentucky Offender Online Lookup,

http://kool.corrections.ky.gov/KOOL/Details/4463.[3]   However, due to the operation of KRS 439.563 (3)(d) and (5), Mr. Neal will now be on parole until "the restitution is paid in full, even if this would lengthen the period of supervision beyond the statutory limit of parole supervision or the statutory limit for serving out the sentence imposed." KRS 439.563(5); *see also* KYPB 12.00(C)(2) (Exhibit 1).

If he is still alive at that point, Roy Neal will be 98 years old. He will have served a total of three years and eight months in prison, and 39 ½ years on parole. Essentially, the Parole Board unilaterally has meted out to Mr. Neal a life sentence for Class D felonies.

### IV. EXTENSION OF MR. NEAL'S PAROLE BEYOND THE STATUTORY MAXIMUM AMOUNTS TO CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AMENDMENT.

In addition to violating equal protection and due process, the sentence violates the Eighth Amendment proscription against cruel and unusual punishment as being grossly excessive to the crime.  Mr. Neal will spend over forty years in the custody of the state, either incarcerated or on parole, before he will be released for offenses which ordinarily carry a maximum sentence of five years apiece. If he fails to pay, he stands to be in prison indefinitely and without any way of knowing when he will even come up for parole, or subject to prosecution for contempt of court under undefined terms as discussed above, or both.

By contrast, in the federal system, restitution orders under 18 U.S.C. §§ 3663 and 3663A are typically far too large to pay off during a period of incarceration and supervised release, leading to the same issue as that confronting Mr. Neal. The federal system, however, has a civil collections regime managed by the Financial Litigation Units (FLUs) in United States Attorneys' offices

---

[3] This stands in contrast to Mr. Neal's Corrections time card, which placed his minimum expiration of sentence at 05/24/2017 and his maximum at 08/08/2020.

15

nationwide. Once a federal defendant completes his/her sentence, the restitution order is turned over to the FLU for civil collection. The FLU can bring the defendant in to answer questions under oath pursuant to a bill of discovery; set a payment plan; and/or institute collections actions.

While it is outside the purview of this Court to impose a whole new restitution regime upon the Commonwealth of Kentucky, this Court can relieve Mr. Neal of the burden of being in state custody and subject to parole as he ages and confronts the probability that he will no longer be able to work full-time. As it is, even though he has more than served his time, he may not apply for the restoration of his rights under Kentucky law or Georgia law. He has lived a quiet life and faithfully made his payments since his release. He "walked down" his parole term, or what should have been his parole term. Nonetheless, because he is still technically in custody, he will never be able to vote again, anywhere.

## CONCLUSION

Petitioner, Roy Neal, has demonstrated that he is being held in violation of the Constitution of the United States, specifically the Due Process Clauses of the Fifth and Fourteenth Amendment; the Equal Protection Clause of the Fourteenth Amendment; and the Eighth Amendment, by the Commonwealth of Kentucky by and through the Kentucky Parole Board, pursuant to KRS 439.563, and that this statute is unconstitutional as currently enacted. Petitioner asks that this Court grant a writ of habeas corpus pursuant to 28 U.S.C. 2241.

Respectfully submitted,

/s/ Maureen Sullivan_____
MAUREEN SULLIVAN
Kentucky Home Life Building
239 South Fifth Street, Suite 1700
Louisville, Kentucky 40202
(502) 548-1699
sullivanappeals@gmail.com

CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and correct copy of the foregoing was sent via ECF this 3rd day of December, 2020, which will send a notice of electronic filing to all counsel of record.

                                     /s/ Maureen Sullivan
                                     MAUREEN SULLIVAN